Lorraine HIERS, Personal Representative of the Estate of Gene Hiers, Deceased, and Lorraine Hiers, Plaintiffs/Respondents,

v.

J. Stephen LEMLEY, M.D. and J. Stephen Lemley, M.D., Inc., Defendants/Appellants.

No. 74386.

Supreme Court of Missouri, En Banc.

June 2, 1992.

Morris E. Stokes, Kevin F. O'Malley, Mary L. Reitz, Clayton, for defendants, appellants.

Dowd & Dowd, P.C., Douglas P. Dowd, St. Louis, for plaintiffs, respondents.

HOLSTEIN, Judge.

This case involves the use or, more aptly, misuse of an "Affirmative Converse Instruction" described in MAI 33.01 and 33.-05.[1] Defendant J. Stephen Lemley submitted what purports to be an affirmative converse in response to the verdict directing instruction in a medical malpractice case. Following a verdict for defendant, the trial court sustained plaintiff Lorraine

Hiers' motion for new trial, citing as its reason that the converse instruction was in error. This appeal by defendants followed. We affirm.

## FACTS

On March 6, 1984, Gene Hiers was admitted to St. Joseph's Hospital for tests to determine the cause of respiratory problems. Biopsies were performed. On March 9th Dr. William H. Sheffield, a pathologist and director of the hospital's pathology laboratory, issued a report concluding that Hiers had (1) interstitial pneumonitis and (2) bronchoalveolar carcinoma, more commonly referred to as lung cancer. Another pathologist, Dr. William Boyce, also examined the biopsy slides with Dr. Sheffield. Dr. Boyce was uncertain of the diagnosis. As a result, a sample was sent to an expert in pulmonary pathology in North Carolina.

Dr. Lemley, an oncologist, also viewed the biopsy slides. He then informed Hiers that he had cancer and had only three weeks to live. Lemley recommended chemotherapy. Lemley's recommendation was based on the pathology reports and his own examination of the tissue. Lemley was aware that a request had been made for an outside opinion. On Lemley's recommendation, Hiers consented to and received one chemotherapy treatment on March 19, 1984. The treatment was followed by extreme nausea, debilitation, loss of weight, loss of hair, and abnormal blood counts. On March 23rd the North Carolina pathologist issued his report that the tissue indicated only interstitial pneumonitis. His findings were "against a diagnosis of … carcinoma." On April 1st Dr. Lemley entered the Hiers' hospital room. According to Mrs. Hiers, Dr. Lemley was very excited and reported, "We just received a report back stating your husband does not have cancer." Approximately two years later Hiers died of interstitial pneumonitis.

Lorraine Hiers brought a survivor's action for medical malpractice against Dr.

---

1. All references to MAI are to the Missouri Approved Jury Instructions (4th ed. 1991), unless otherwise noted.

Lemley submitting negligence in three respects:

(1) misdiagnosing Hiers as having cancer,

(2) treating Hiers with chemotherapy even though he knew the cancer diagnosis was in doubt, and

(3) failing to promptly inform Hiers upon learning the diagnosis was in error.

A defendant's verdict was returned by the jury. However, the trial court granted plaintiff's motion for new trial. Dr. Lemley appeals from the order granting a new trial.

## I.

The first point on appeal claims the trial court's order granting a new trial was insufficient to meet the specificity requirements of Rules 78.03 and 84.05(b). Rule 78.03 provides, "Every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted." Rule 84.05(b) states in part, "When a trial court grants a new trial without specifying of record the ground or grounds on which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed on the respondent."

The order sustaining the motion for new trial stated, "Plaintiffs' Motion for a New Trial is sustained because of error in giving Instructions 9 and 13 for the reasons stated in paragraph 6 of Plaintiffs' Motion for New Trial." Paragraph 6 of the motion for new trial states:

6. The trial court erred, and prejudicially so, in submitting Defendants' Instruction Numbers 9 and 13 in that said Instructions were roving commissions for the jury to find that in the event Doctor Lemley had any reason for his conduct he should be exonerated from liability, and in that there was no standard presented as to whether or not Doctor Lemley's "reasonable belief" or "reasonably relied" was not negligent and said Instructions were comments on the evidence. These instructions were not

proper converses. Said instructions are attached as Exhibits A and B.

Said instructions also failed to furnish any citation for the second paragraph of said instructions, and there is no authority for such an instruction. The trial court erred in failing to direct defense counsel to furnish authority for said instructions in that Plaintiffs are at a legal disadvantage in preparing their objections to said instructions.

These instructions have no basis in law, and Plaintiffs are clearly entitled to a new trial because of their erroneous nature.

The purpose of requiring specificity in motions for new trial is to define the reason for granting the new trial and thus limit the issues cognizable on appeal, thus promoting judicial economy. *Dixon v. Bi-State Dev. Agency*, 636 S.W.2d 696, 698 (Mo.App.1982); *Hightower v. Hightower*, 590 S.W.2d 99, 103 (Mo.App.1979). An order granting a new trial due to an error in giving one or more instructions, without explaining why the instructions were erroneous, has been held insufficiently specific under our rules and their statutory predecessors. *Chappell v. City of Springfield*, 423 S.W.2d 810, 811 (Mo.1968); *Davis v. Kansas City Public Service Co.*, 361 Mo. 168, 233 S.W.2d 669, 678 (banc 1950); *Southern Missouri Bank v. Fogle*, 738 S.W.2d 153, 156 (Mo.App.1987). However, where the order granting a new trial finds that an instruction was erroneous for specific reasons set out in identified paragraphs of a motion for new trial, the failure to recite the contents of the paragraph does not violate the specificity requirement of our rules. *Caldwell v. St. Louis Public Service Co.*, 275 S.W.2d 288, 290 (Mo.1955); *Osborne v. Warehouse Mail Order*, 622 S.W.2d 34, 35 (Mo.App.1981). The argument that the trial court's order granting a new trial lacks specificity because it adopts its reasons by referencing a paragraph of the motion for new trial is without merit.

The content of the motion for new trial is quoted above in its entirety. It contains enough specific detail to put the defendant on notice that the trial court found the

converse instruction was improper because it 1) amounted to a comment on the evidence, 2) gave the jury excessive latitude in returning its verdict, and 3) failed to establish a proper standard of care by which the jury could assess the reasonableness of Dr. Lemley's conduct. In addition, the recital that the converse instruction "failed to furnish any citation for the second paragraph ... and there is no authority for such an instruction" is an inartful way of saying that the converse instruction that was submitted was not consistent with the approved converse instruction forms and the notes on use for converse instructions. *Rule 70.02.* Taken as a whole, paragraph 6 was sufficiently specific to assert a legal basis for granting a new trial and to define and limit the issues to be addressed on appeal.

Defendant relies on *Goodman v. Allen Cab Co.,* 360 Mo. 1094, 232 S.W.2d 535 (1950), as support for its claim that the trial court's order was overly broad and therefore insufficient to meet the specificity requirements of Rules 78.03 and 84.05(b). In *Goodman* the trial court's order granting a new trial merely referenced a paragraph of the motion for new trial stating "[t]hat the court erred in admitting, over the objection and exception of plaintiff, incompetent, irrelevant, immaterial, improper, prejudicial and illegal evidence offered by the defendant." 232 S.W.2d at 537. Thus, *Goodman* is distinguishable because the trial court failed to identify the evidence to which it referred.

## II.

Appellant's second claim is that plaintiff did not make a submissible case of negligent medical treatment. If no submissible case was made, any error in giving the converse instruction was inconsequential and the trial court should have sustained the defendant's motion for directed verdict.

■ To determine if a submissible case was made by plaintiff, this Court "must view the evidence and inferences therefrom in a light most favorable to the plaintiffs and disregard all contrary evidence." *Community Title Co. v. Roosevelt Federal*

*Savings & Loan Ass'n,* 796 S.W.2d 369, 371 (Mo. banc 1990). For plaintiffs to make a submissible case of medical malpractice, they must establish (1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) there was a causal connection between the act or omission and the plaintiff's injury. *Jines v. Young,* 732 S.W.2d 938, 944 (Mo.App.1987).

### A.

■ The first theory of negligence was that Dr. Lemley made a misdiagnosis that Gene Hiers had lung cancer. Defendant argues here that he made no diagnosis or misdiagnosis of lung cancer. The hospital record includes the following entry dictated by Dr. Lemley:

Patient eventually underwent a right minithoracotomy at which time some confusion was initially encountered as to the etiology of his problem, being either desquamative interstitial pneumonitis vs. bronchoalveolar carcinoma; however, on review of pathology slide preparations, this definitely appears to be bronchoalveolar cell carcinoma.

. . . .

Impression:

1. On the basis of my interpretation of the pathology slide, I definitely feel this is bronchoalveolar cell type of lung carcinoma. Unfortunately, disease at this point is rather far advanced and the patient has a very poor prognosis.

At trial, Dr. Lynch, a specialist in pathology, testified that neither an oncologist nor a general pathologist would have the expertise to make a proper diagnosis of Hiers' condition. He also testified that Dr. Lemley's diagnosis and treatment did not measure up to the standard of care that a careful and reasonable physician would have exercised. Hiers' wife and niece testified that Dr. Lemley told them that Hiers had cancer and would die in three weeks. Treating these facts as true, it cannot be said that there was no evidence that Dr. Lemley negligently misdiagnosed the condition as being cancerous.

## B.

Defendant also argues that there was no evidence that the delay in notifying the patient caused any damage. Defendant's claim is well taken. Mrs. Hiers testified as to the mental and physical condition of her husband from March 26 through March 30. Gene Hiers had headaches, would not eat, and had to be spoon fed. He was extremely weak, emotionally "down," and hostile toward his wife. However, no medical testimony was adduced showing a causal connection between these complaints and the delay. Hiers' condition during the period between March 26 and April 1 was not shown to be different from the condition caused by the chemotherapy following March 19. The evidence of emotional damage for the delay in telling Gene Hiers he did not have cancer was insufficient to make a submissible case on that basis. If the same evidence is presented on retrial, the third alternative theory should not be submitted.

## C.

Appellants claim Dr. Lynch's testimony did not establish a standard of care for an oncologist or that Dr. Lemley's conduct deviated from that standard. Dr. Lynch testified that administering chemotherapy when a patient was not experiencing any major medical problems and when the physician knew that the biopsy slides had been sent for an outside review amounted to a failure to exercise that degree of skill and learning that an ordinarily careful and prudent physician would have exercised.

The fact that Dr. Lynch's particular specialty is in pathology rather than oncology is not reason to discredit entirely his expert opinion in this matter. A physician is generally competent to testify in a specialty field in which he has limited experience and training, even an area that is not his particular specialty. *Swope v. Printz*, 468 S.W.2d 34, 40 (Mo.1971). When an expert from a particular profession is called to testify, it is not normally required that he be a specialist in a particular branch of the profession. *In re C.L.M.*,

625 S.W.2d 613, 615 (Mo. banc 1981). Here the combined experience and training of Dr. Lynch provided a sufficient basis to testify concerning the standard of care for a physician in Dr. Lemley's position. Plaintiff's evidence was sufficient to make a submissible case of medical malpractice.

## III.

Defendants' third point is that the trial court erred in granting a new trial because the converse instructions were proper. The relevant instructions are as follows:

### INSTRUCTION NO. 12

Your verdict must be for Plaintiff, Lorraine Hiers, against both defendants if you believe:

First, Defendants misdiagnosed Gene Hiers' condition as broncho-alveolar cell carcinoma of the lung, or

Defendants administered chemotherapy to Gene Hiers for cancer knowing that a consultant's opinion was being sought, or

Defendants failed to timely advise Gene Hiers that he did not have cancer, and

Second, that Defendants in any one or more of the respects submitted in Paragraph First, were thereby negligent, and

Third, such negligence directly caused or directly contributed to cause injury to Lorraine Hiers' husband, and Plaintiff Lorraine Hiers thereby sustained damage.

### INSTRUCTION NO. 13

Your verdict must be for defendants on the claim of Lorraine Hiers unless you believe defendant Lemley was negligent as submitted in Instruction No. 12 and as a direct result of such negligence, plaintiff Lorraine Hiers sustained damage, or

Your verdict must be for defendants on the claim of Lorraine Hiers if you believe defendant Lemley reasonably relied upon the opinions of the pathologists at St. Joseph's Hospital, and when defendant Lemley ordered chemotherapy he

reasonably believed that a delay in such treatment would not be in the patient's best interests, and Gene Hiers was timely advised by another treating physician he did not have cancer.

Instructions 8 and 9 are identical to those above except they submit the claim of the personal representative of Gene Hiers' estate.

There are two fundamental types of authorized converse instructions: the true converse and the affirmative converse. The true converse begins, "Your verdict must be for the defendant unless you believe ..." and the remainder of the instruction is to be taken from the verdict director. The form book for the language of the converse instruction, other than the introductory phrase, is the verdict director itself. *MAI 33.01.* In contrast, an affirmative converse presents a hypothetical ultimate issue which, if true, would defeat plaintiff's claim. The affirmative converse instruction begins, "Your verdict must be for the defendant if you believe ..." and it requires independent evidence for support. *MAI 33.01.*

Each defendant is allowed only one converse instruction to respond to each verdict directing instruction directed to such defendant. *MAI 33.01.* The converse instruction above violates that rule by combining a true converse instruction, using the disjunctive "or," with an affirmative converse instruction. The rationale for limiting converse instructions has been expressed as follows:

> Since converse instructions are in a sense "excess baggage" in that they are not essential to a complete logical presentation of the case to the jury, the question arises as to how many such instructions the defendant is entitled to add to the bundle....
>
> Since converse instructions are only an accessory, it is reasonable that there should be some limitation on the number of such instructions the defendant can add to the instruction package. The main argument for having converse instructions is to give the defendant an

instruction which parallels the plaintiff's verdict director by stating, "Your verdict must be for the defendant if...." Thus, it is not surprising that the number of converse instructions a defendant may use in a case is directly related to the number of verdict directors in the case.

E. Thomas,[2] *Converse Instructions Under MAI,* 42 Mo.L.Rev. 175, 192 (1977).

The true converse portion of this converse instruction also fails to follow the language of the verdict director as required by MAI 33.01. The verdict director stated that the negligence "directly caused or directly contributed to cause" the damage, whereas the converse instruction stated that the damage was a "direct result of such negligence." The comment regarding true converse instructions requires that they be "in substantially the same language used in the verdict directing instruction." *MAI 33.01.* In this case, the converse instruction was erroneous. Since the jury may have perceived that this instruction required plaintiff to prove that Dr. Lemley could not be liable if his negligence only contributed to plaintiff's damages, plaintiff was prejudiced by the error.

The affirmative converse instruction is also flawed. One of the premises of the Missouri Approved Instructions is to submit only affirmative elements of plaintiff's case and to avoid the duplication and confusion involved in submitting other propositions that are merely inconsistent with the propositions the plaintiff must prove. MAI 1.03 prohibits instructions given on behalf of a defendant hypothesizing that the conduct of one other than the defendant was the sole cause of the occurrence. The first portion of the converse instruction, which hypothesizes that "defendant Lemley reasonably relied on the opinions of the pathologist at St. Joseph's Hospital," comes very close to being a sole cause instruction in that it suggests that the pathologists were the sole cause of plaintiff's injury.

In addition, the submission of the question of whether "defendant Lemley reasonably relied on the opinions of the patholo-

**2.** Now a member of this Court.

gists at St. Joseph's Hospital" is merely a converse using different language from that portion of the verdict director hypothesizing that Lemley misdiagnosed Hiers' condition. Similarly, the second element of the affirmative converse asserts that in ordering chemotherapy, Lemley "reasonably believed that delay in such treatment would not be in the patient's best interests." That submission is a converse, in different language, of the verdict director's hypothesis that Lemley was negligent to administer chemotherapy knowing that a consultant's opinion was being sought. The third element of the affirmative converse is that Gene Hiers was "timely advised by another [ ] physician he did not have cancer." Here again, that is merely a different way of submitting the same issue submitted in the verdict directing instruction that Lemley failed to timely advise Gene Hiers that he did not have cancer or that Hiers was not damaged by Lemley's delay. The affirmative converse instruction is not to be used merely as a means of conversing, in different language, the very same issue submitted in the verdict director instruction. *Stover v. Patrick,* 459 S.W.2d 393, 396 (Mo. banc 1970). *See also Oliver v. Bi–State Dev. Agency,* 494 S.W.2d 49 (Mo.1973). The approved method of conversing an issue in the verdict director is to use a true converse. The authorization for using an affirmative converse instruction should not be the occasion for permitting a defendant to select an evidentiary aspect of each of three disjunctive submissions and submit those as an affirmative converse.

■■■ Because of the repeated misuse of affirmative converse instructions noted above, we conclude that further direction for the use of such instructions is required. An affirmative converse instruction is appropriate where the verdict director assumes as true or omits a disputed ultimate issue.[3] Using an affirmative converse instruction under other circumstances is questionable in that such use tends to violate one of the numerous other prohibitions

relating to affirmative converse instructions.

Finally, the affirmative converse aspect of the converse instruction makes reference to what Dr. Lemley "reasonably relied upon" and "reasonably believed." The instruction fails to disclose whether the jury was to hold Dr. Lemley to the standard of a reasonably careful layman or a reasonably careful physician. Because the instruction fails to make clear that Dr. Lemley was held to the standard of his profession, the affirmative converse portion of Instructions No. 9 and 13 were misleading and, because they were misleading, were prejudicial.

For over twenty years no case has been decided by this Court approving the giving of an affirmative converse instruction. During that period such instructions have consistently been held to violate one or more of the rules restricting their use. *See Morse v. Johnson,* 594 S.W.2d 610, 614 (Mo. banc 1980); *Oliver v. Bi–State Dev. Agency,* 494 S.W.2d at 52; and *Stover v. Patrick,* 459 S.W.2d at 397. A similar track record for disapproval of affirmative converse instructions is disclosed in cases recently decided by the Missouri Court of Appeals. *See, inter alia, Hiller v. Diestelhorst,* 820 S.W.2d 522, 524 (Mo.App.1991); *Howard Constr. Co. v. Teddy Woods Constr. Co.,* 817 S.W.2d 556, 561–62 (Mo.App.1991); and *Murphy v. City of Springfield,* 794 S.W.2d 275, 287 (Mo.App.1990) (if given, an affirmative converse instruction would have been error).

From these decisions it is apparent that the affirmative converse instruction is not favored for a number of reasons. Such instruction, like the true converse, is an accessory and unnecessary to the instruction package. An affirmative converse instruction tends to resemble a prohibited "sole cause" instruction. The affirmative converse instruction is often merely a resubmission of the issues found in the verdict director. It requires evidentiary sup-

---

3. Nothing in this opinion is intended to suggest that a defendant is obligated to tender an affirmative converse instruction to cure a plaintiff's verdict director that omits an essential ultimate issue; the defendant is entitled to make an appropriate objection to such a verdict director and stand on that objection.

port to justify its submission. In addition, it has the propensity to violate the general premise of the approved instruction format by including unnecessary evidentiary details instead of ultimate issues. *Rule 70.-02(a)*. These potential problems have led some experts to squarely advise, "Do not use the affirmative converse instruction." Thomas, 42 Mo.L.Rev. at 206.

One of the few recent cases approving the giving of an affirmative converse instruction is *McMullin v. Politte*, 780 S.W.2d 94 (Mo.App.1989). In that slip and fall case, the plaintiff's verdict director failed to hypothesize the "ultimate issue" that plaintiff's fall occurred on a parking lot owned or operated by defendant. The defendant submitted an affirmative converse requiring a verdict for the defendant if plaintiff fell on another's parking lot. A verdict was returned for the defendant. On appeal the court concluded that in view of the omission of an essential issue from the verdict director, plaintiff was in no position to complain that defendant took on the burden of presenting evidence in submitting the issue in an affirmative converse instruction. 780 S.W.2d at 96. *See also Cline v. Carthage Crushed Limestone Co.*, 504 S.W.2d 102, 113 (Mo.1973). An affirmative converse instruction may be appropriate where it is used by a defendant to submit an ultimate issue that was erroneously excluded from plaintiff's verdict director. However, the plaintiffs' verdict directors in this case, while not models, are not shown to be incomplete.

The leading case of this Court to approve the giving of an affirmative converse instruction is *Wilson v. Checker Cab Co.*, 431 S.W.2d 122 (Mo.1968), another slip and fall case. There the verdict directing instruction presented two alternative ultimate issues: (1) that a taxi driver allowed a taxi cab to move forward while plaintiff was alighting or (2) the taxi driver failed to provide plaintiff a reasonably safe place to alight. An affirmative converse instruction was submitted requiring a verdict for defendant if plaintiff alighted from the cab and travelled approximately twenty feet before she fell. A verdict and judgment for defendant were set aside on motion for new trial. On appeal this Court reversed the order granting a new trial. The Court concluded the affirmative converse instruction was not erroneous.

The problem with the holding in *Wilson* is that the affirmative converse instruction violated a fundamental rule of our scheme of approved instructions. The ultimate issue was whether plaintiff was injured while alighting from the cab. That issue was submitted in a verdict directing instruction. The verdict directing instruction or a true converse would have provided the platform from which to argue the evidence that plaintiff had moved away from the cab some twenty feet before falling and that her injury was not caused by any action on the part of the taxi driver while she was alighting from the taxi, as hypothesized in the verdict directing instruction. The specific evidentiary details of how far plaintiff was from the taxi when she fell are inappropriate under the theory of our approved instructions. *Rule 70.02(a)*. For that reason, the viability of the holding in *Wilson* is highly questionable.

A circumspect defense lawyer should be hesitant in giving an affirmative converse instruction. We reiterate that such an instruction should only be given if supported by the evidence. The instruction is suspect unless the converse submits a contested ultimate issue that was omitted from or assumed as true in the verdict director. As previously noted, the judicial landscape is littered with reversals and retrials in cases where affirmative converse instructions were given. Here again, the giving of the converse instructions was prejudicial error. The order granting a new trial is affirmed.

ROBERTSON, C.J., COVINGTON, BENTON and THOMAS, JJ., and PARRISH and MAUS, Special Judges, concur.

PRICE, J., not sitting because not a member of the Court when case was submitted.