Richard L. DUNCAN, Terry Duncan, Ronald Duncan, individually and as trustees for Tri–State Lawn & Garden, Inc., Plaintiffs–Appellants,

v.

FIRST STATE BANK OF JOPLIN, Defendant–Respondent.

No. 17941.

Missouri Court of Appeals, Southern District, Division One.

Feb. 26, 1993.

Charles E. Rendlen, Jr., Rendlen, Rendlen, Redington, and Bastian, Hannibal, Robert W. Richart, Joplin, for plaintiffs-appellants.

Karl W. Blanchard, Jr., Robert L. Bradley, Blanchard, Van Fleet, Martin, Robertson and Dermott, Joplin, for defendant-respondent.

SHRUM, Judge.

The plaintiffs sought money damages from the defendant First State Bank of Joplin asserting, among other theories, detrimental reliance on the defendant's promise of a loan, the proceeds of which were never disbursed. A jury returned a verdict denying recovery.

The plaintiffs appeal, claiming the trial court submitted an erroneous affirmative converse instruction and abused its discretion by allowing testimony from an expert witness whose identity was not timely disclosed. We conclude the affirmative converse instruction as submitted constituted reversible error.

The defendant argues that we should affirm the judgment nonetheless because the plaintiffs failed to make a submissible

case on a breach of contract theory. Because the case went to the jury on a promissory estoppel theory, and the defendant does not challenge submissibility on that theory, we do not consider the question of submissibility.

## FACTS

In March 1986 Richard[1] became interested in owning and operating a John Deere Company consumer products (lawn and garden equipment) dealership. Pursing that interest, Richard and his brother, Ronald, met with representatives of John Deere in April. John Deere suggested Joplin, Missouri, as the area with the most potential. After investigation, Richard and Ronald settled on that area for their venture and made application for appointment as a dealer.

The brothers had $50,000 in cash and equipment to put into the business, but John Deere required $75,000 to $100,000 more even though John Deere would provide floor-plan financing for the dealership's inventory of new equipment and parts. To secure the additional funds Richard applied to the defendant for a Small Business Administration guaranteed loan of $85,000. Because the plaintiffs' operation was a start-up business, the defendant would not make the loan unless the SBA participated in it. On April 24 Richard signed the SBA loan application on which he listed his proposed collateral, including inventory of $50,000.

On April 30 Richard telephoned the defendant's vice-president, Roger Bohm, the officer with whom he had principally dealt, to inquire about the loan application. Bohm told Richard that the defendant's loan committee had approved the loan and that the defendant would require as security a second deed of trust on the Cairo, Missouri, residence of Richard and his wife Terry. On May 15, Bohm called Richard and told him the SBA had agreed to guarantee the loan.

In late May Richard received a copy of the SBA's "Authorization and Loan Agreement" that specified that the loan proceeds were to be used for working capital ($12,000) and for the purchase of inventory ($50,000) and fixtures, furniture, machinery, and equipment ($23,000). The SBA's collateral requirements included a "First security interest in all inventory and accounts receivable now owned or hereafter acquired and the proceeds thereof" and the guaranty of Richard and Terry secured by a deed of trust on their residence in Cairo, "subject only to a first deed of trust held by City Bank & Trust, Moberly, Missouri having an approximate balance of $47,000.00."

Richard asked Bohm for a letter he could show to John Deere as confirmation that he had obtained the long-term financing John Deere required. Bohm complied by writing the following and providing it to Richard:

May 16, 1986

To whom it may concern:

This is to inform you that Richard Duncan d/b/a Tri State Equipment and Supply (a proposed John Deere dealership), has been approved a loan at this bank in the amount of $85,000.00.

Sincerely,

/s/ Roger A. Bohm

Roger A. Bohm

Assistant Vice President

Armed with Bohm's letter, Richard and Ronald met with John Deere officials on May 22, and Richard signed various documents including a UCC–1 form. On May 31 he signed two additional UCC–1 forms in favor of John Deere. Richard insisted that he did not understand the purpose of the UCC–1 forms when he signed them. The UCC–1 documents are not in the record, but from the questioning of Richard at trial it appears the forms covered "all equipment, inventory and other items even though paid for by [Richard] with the bank [loan] proceeds." Bohm testified the UCC–1's gave John Deere "a blanket filing on everything" and that John Deere was "number one."

After receiving Bohm's letter, the plaintiffs formed a corporation under which to

1. For convenience, we refer to the plaintiffs by their first names.

conduct the business. They leased and occupied a building, opened two bank accounts in the name of the corporation, and began receiving machines and parts from John Deere. On June 23 they opened for business.

Also on June 23 Bohm learned of the filing of the UCC–1's from "a public record bulletin" issued by a credit bureau. Bohm wrote Richard to advise him of a possible violation of the loan agreement and to inform him the defendant might not be able to proceed with the loan.

Subsequent meetings of SBA and John Deere officials, Richard, and Bohm failed to resolve the impasse. The defendant never disbursed any loan proceeds to Richard, and on September 12, 1986, the plaintiffs closed the business.[2]

The plaintiffs filed a four-count lawsuit based on various theories seeking actual and punitive damages from the defendant. After Ronald was dismissed as a plaintiff, Richard and Terry submitted their case to the jury on a promissory estoppel theory.[3] The jury verdict and resulting judgment were for the defendant. Richard and Terry appeal.

## DISCUSSION AND DECISION

### Affirmative Converse Instruction

The plaintiffs first contend the trial court erred in submitting to the jury Instruction No. 7, the defendant's affirmative converse. A not-in-MAI instruction, it read:

Your verdict must be for defendant if you believe there were conditions to defendant's approval of the loan, and plaintiffs failed to comply with the conditions.

**2.** At trial, the defendant developed evidence that on May 18 Richard and Terry refinanced their residence raising the loan balance by $18,000. The defendant now assigns as an additional reason for refusing to proceed with the loan its claim that the refinancing reduced its security in the residence. However, there is nothing in the record to indicate the defendant advised Richard of this reason at the time of its refusal to release the loan proceeds.

**3.** The plaintiffs' verdict directing instruction stated:

In their first point on appeal, the plaintiffs challenge the instruction as erroneous because "it submitted nothing for the jury to find as a fact," it "failed to hypothesize any facts as to what the 'conditions' were," and, as a result, the instruction gave the jury "a roving commission."

■■■ There is no MAI applicable to the facts of this case. Rule 70.02 contemplates the frequent situations in which no MAI is applicable and provides for modification of an existing MAI or drafting of a "not-in-MAI" instruction. *Karnes v. Ray*, 809 S.W.2d 738, 740 (Mo.App.1991). A modified MAI or a not-in-MAI instruction is not presumed to be erroneous. *See Taylor v. Associated Elec. Coop., Inc.*, 818 S.W.2d 669, 673[9] (Mo.App.1991). To reverse a jury verdict on the ground of not-in-MAI instructional error, it must appear that the offending instruction misdirected, misled, or confused the jury; the burden to prove the error rests with the party challenging the instruction. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986).

■■■ An affirmative converse jury instruction must submit a "hypothesized ultimate issue which, if true, would defeat plaintiff's claim.... The facts hypothesized in an affirmative converse instruction must be sufficient in law to defeat the plaintiff's claim." MAI–4th 33.01 at 466 (1991); *MFA Inc. v. Dettler*, 817 S.W.2d 658, 663 (Mo.App.1991). As is the case with a verdict directing instruction, an affirmative converse should hypothesize only those facts that submit an ultimate issue and avoid submission of unnecessary evidentiary details. *Hiers v. Lemley*, 834 S.W.2d 729, 736 (Mo.banc 1992); *Douglas*

Your Verdict must be for the Plaintiffs Richard and Terry Duncan if you believe:

First, Defendant First State Bank promised to loan Plaintiff Richard Duncan the sum of $85,000.00 for a John Deere dealership; and

Second, Plaintiffs relied upon said promise; and

Third, Plaintiffs opened and operated a John Deere dealership; and

Fourth, Defendant First State Bank refused to disburse the proceeds of the loan; and

Fifth, Plaintiffs were thereby damaged.

*v. Hoeh,* 595 S.W.2d 434, 438 (Mo.App. 1980); Rule 70.02(a) & (e).

There are no "precise, universally applicable definitions which explicitly differentiate evidentiary facts from ultimate facts...." *Douglas,* 595 S.W.2d at 438. As a result, courts must determine on a case by case basis what are the ultimate facts that must be submitted and what are unnecessary evidentiary details to be excluded. *Id. See also Grindstaff v. Tygett,* 655 S.W.2d 70, 73 (Mo.App.1983); *Penberthy v. Penberthy,* 505 S.W.2d 122, 130 (Mo. App.1973). This determination involves analysis of the specific theory relied on by the party offering the instruction. *Grindstaff,* 655 S.W.2d at 73[2, 3]; *Douglas,* 595 S.W.2d at 438[4].

The defendant contends that implicit in the verdict directing instruction and crucial to the plaintiffs' theory of recovery is the notion that the defendant's promise was unconditional. The defendant argues,

> The jury had to decide either for the plaintiffs (that the promise was unconditional) or for the defendant (that the promise contained conditions). For these reasons, the affirmative converse instruction, submitted by the defendant, clearly set forth facts which defeated the plaintiffs' claim and, therefore, was a properly submitted instruction.

■ The issue we must resolve is whether the affirmative converse instruction, in the defendant's words, "clearly set forth facts which defeated the plaintiffs' claim." We hold that it did not.

In *Davis v. Jefferson Sav. & Loan Ass'n,* 820 S.W.2d 549 (Mo.App.1991), the court examined a verdict directing instruction submitting the issue of whether the plaintiff was a holdover tenant. The court found error in the portion of the instruction that read:

> Third, after said purchase, defendant verbally consented to plaintiff's tenancy for the year next following October 31, 1983 or defendant, by its conduct, implied its consent to plaintiff's tenancy for the year next following October 31, 1983....

*Id.* at 555–56. The court observed that the plaintiff based his claim as a holdover ten-

ant on the defendant's verbal consent or the defendant's conduct. The court agreed with the defendant's assertion that the word *conduct* as used in the instruction had "no defined dimensions" and thus "the jury could use any 'conduct' of defendant to find defendant's 'implied consent.'" *Id.* at 556. Applying the principle that an instruction authorizing a verdict "must require a finding of all ultimate facts necessary to sustain the verdict," the court stated, "Here, the jury was simply not told what alleged conduct of defendant they were permitted to use to infer defendant's consent. It was permitted to roam freely through the evidence and choose any facts which suited it[s] fancy or its perception of logic. This was an unacceptable, roving commission." *Id.*

The defendant's affirmative converse instruction suffers from the same deficiency as does the verdict directing instruction in *Davis.* Like the word *conduct* in the instruction in *Davis,* the word *conditions* in the instruction now under consideration has no circumscribed dimensions, and its use in the instruction did not tell the jury what conditions they were permitted to use to find in favor of the defendant. Borrowing from *Davis,* 820 S.W.2d at 556, we conclude the instruction permitted the jury "to roam freely through the evidence and choose any facts which suited it[s] fancy or its perception of logic. This was an unacceptable, roving commission."

The defendant implicitly recognizes the deficiency in the affirmative converse instruction. We quote the following passage from the defendant's brief:

> [I]t is undisputed that the bank's approval was contingent upon representations made by the plaintiffs on their SBA loan application and contained in the authorization and loan agreement as well as discussions with the bank that the plaintiffs would provide a first security interest in inventory and a second mortgage on their home. These were the conditions upon which the bank approved this loan to the plaintiffs.

The defendant's converse instruction hypothesized facts which, if true, defeat-

ed the plaintiffs' claim. That is, if the jury believed that the defendant's "promise" to loan money was subject to the plaintiffs['] providing the defendant with a first security interest in the inventory and a second mortgage on the equity in their home, then those facts would defeat the plaintiffs' claim that the defendant made an unconditional promise to loan money.

The defendant's argument demonstrates why Instruction No. 7 was prejudicially erroneous. If the jury believed the defendant's approval of the loan was contingent on the plaintiffs' providing a first security interest in their inventory and a second mortgage on their home, and if the jury believed the plaintiffs did not meet those requirements, then the plaintiffs' claim would be defeated. However, Instruction No. 7 does not hypothesize those contingencies. The instruction simply hypothesizes the existence of "conditions."

To have submitted the two loan requirements as ultimate facts would not have violated the prohibition of Rule 70.02(a) & (e) that an instruction should not submit unnecessary evidentiary details. In *Kilmer v. Browning*, 806 S.W.2d 75 (Mo.App. 1991), we considered an instruction that included the following submissions:

> Second, that on October 21, 1987, the exposed metal flue pipes and connectors to the floor furnace were defective and as a result the floor furnace was not reasonably safe, and
>
> Third, Defendant KPL Gas Service failed to adequately inspect the exposed metal flue pipes and connectors to the floor furnace, and
>
> Fourth, Defendant KPL Gas Service was thereby negligent in supplying gas to the floor furnace....

806 S.W.2d at 83. On appeal, KPL Gas Service contended the instruction submitted evidentiary rather than ultimate facts. We held the instruction was not deficient on that basis, stating, "The ultimate ques-

tion was whether [KPL's employee] adequately inspected which, in this instance, would necessarily have been an adequate look at the venting system." 806 S.W.2d at 84.

In the case before us, the defendant's specific theory to defeat the plaintiffs' claim was the existence of the two conditions set out in the passage we have quoted from the defendant's brief. The affirmative converse should have been written to guide the jury to a consideration of the evidence developed at trial that was relevant to those two specific conditions.[4]

■ The plaintiffs' complaints are limited to the language of the affirmative converse; they do not contend that an affirmative converse instruction should not have been given. Although the propriety of giving an affirmative converse instruction may arise if there is a retrial, we adhere to the general rule that appellate courts will not review an error that has not been assigned. We observe, however, that our supreme court has recently suggested, "A circumspect defense lawyer should be hesitant in giving an affirmative converse instruction." *Hiers*, 834 S.W.2d at 736. The *Hiers* court noted, "An affirmative converse instruction is appropriate where the verdict director assumes as true or omits a disputed ultimate issue" but that its use "under other circumstances is questionable in that such use tends to violate one of the numerous other prohibitions relating to affirmative converse instructions." *Id.* at 735[11].

### Failure to Disclose Expert Witness

It is unnecessary that we consider the plaintiffs' complaint that the trial court abused its discretion in allowing testimony from a defense expert whose identify was not timely disclosed. The plaintiffs now are aware of the expert's identity and the nature of his testimony.

---

**4.** We do not intend to imply that the two mentioned conditions are the only ones that might be hypothesized in an affirmative converse. If, upon retrial, there is evidence to support other conditions, and if defense counsel determines it is appropriate to submit an affirmative converse instruction despite the supreme court's admonition in *Hiers*, 834 S.W.2d at 735–36, then such other conditions may be hypothesized.

*Submissibility of the Plaintiffs' Case*

Having ruled in favor of the plaintiffs on their challenge to the affirmative converse instruction, we now turn to the defendant's argument that the trial court erred in submitting the case to the jury "because the plaintiffs failed to make a submissible case in that the plaintiffs failed to prove that a contract existed between the plaintiffs and the defendant."

Submissibility of the plaintiffs' case on a contract theory is not an issue in this case, which was submitted to the jury on a promissory estoppel theory. The defendant does not argue the issue of submissibility on a promissory estoppel theory. Nor does the defendant challenge the sufficiency of the pleadings to state a claim based on promissory estoppel. We decline to review those issues *sua sponte*.

We reverse and remand for further proceedings.

PARRISH, C.J., and CROW, P.J., concur.