**Andrea CLARK, Plaintiff-Appellant,**

v.

**SEARS, ROEBUCK & CO. and Arvin Industries, Inc., Defendants-Respondents.**

No. 51779.

Missouri Court of Appeals,
Eastern District.

May 12, 1987.

Motion for Rehearing and/or
Transfer Denied
June 9, 1987.

Application to Transfer Denied
July 14, 1987.

Arthur G. Meugler, St. Louis, for plaintiff-appellant.

Douglas O'Leary, St. Louis, for defendants-respondents.

DOWD, Judge.

Plaintiff appeals following a jury verdict for defendants in this strict products liability and negligence action. We affirm.

Plaintiff's daughter, two-year-old Nicole Clark, died in a fire plaintiff contends was caused by a defective electric space heater manufactured by defendant Arvin Industries and sold by defendant Sears, Roebuck & Company. Plaintiff brought suit for wrongful death, based on strict products liability, and negligence for personal injuries plaintiff sustained as a result of the fire.

It was plaintiff's theory that the heater was defective at the time of sale in that the wattage rating of the heater was too large and the power supply cord was inadequate due to the crimping method of attaching the conductors to the plug blades. Under the crimping method, a copper fitting attaches the power supply cord to the plug blades as opposed to soldering the connection. Plaintiff's expert testified that the excessive wattage caused overheating and electrical arcing [1] occurred because of the resistance in the power cord. According to plaintiff's expert, the fire started at the crimp in the power cord, the area between the cord itself and the receptacle plug.

Plaintiff also contended that defendants gave inadequate warning of the potential hazards of their product relying on a provision in the product handbook which states it is normal for the heater plug to feel warm while in normal operation.

Defendants presented evidence that the fire was caused by a post-sale splice of the heater's power cord. A close friend of plaintiff testified the heater cord had previously been spliced and the splice had been covered with black electrical tape. She testified in an earlier deposition that the cord was of different colors on each side of the electrical tape. Plaintiff, herself, admitted to having had to wiggle the cord to make the heater start.

After the fire was extinguished, the fire captain inspected the heater cord, but the insulation had been completely burned from the power cord. Approximately thirty minutes later, the cord was missing from the heater and thus was unavailable at trial.

---

1. "A luminous discharge of electric current crossing a gap between two electrodes." American Heritage Dictionary 67 (1981).

Defendants' expert testified that the crimping method of attaching the conductors to the plug blade was proper. He further testified there had to be a splice in the cable based on plaintiff's testimony that she sometimes had to wiggle the cord to start the heater. According to defendants' expert, the splice was defective in that black electrical tape would provide insufficient insulation and thus was the cause of the fire.

Plaintiff insisted that the heater cord had not been spliced and testified the heater was in the same condition at the time of sale and had not been altered.

The jury found for defendants on both the strict products liability and negligence claims, assessing 100% fault to plaintiff and 0% to defendants.

Plaintiff appeals, requesting review for instructional error only in accordance with Rule 81.16. Appellants eight point appeal can be condensed into two major challenges, the first being to the giving of affirmative converse instructions as opposed to true converses and the second alleging error in the giving of comparative fault instructions.

■■■ We note at the outset that we will reverse for instructional error only when the instructions contain an error of substance with substantial potential for prejudicial effect. *Fowler v. Park Corporation,* 673 S.W.2d 749, 755 (Mo. banc 1984).

In her second, third, fourth, and seventh points on appeal, plaintiff challenges the affirmative converse instructions submitted by the trial court. Rather than submitting true converse instructions that submit the exact converse of plaintiff's verdict directors, defendants chose to submit the following affirmative evidentiary converse in response to plaintiff's verdict directors on both the strict liability and negligence packages:

> Your verdict must be for defendant [Sears, Roebuck & Co. or Arvin Industries] if you believe:
>
> First, the power supply cord for the heater mentioned in evidence was spliced, and

Second, such splice directly caused the fire mentioned in evidence.

In her third and fourth points, plaintiff contends it was error to give the affirmative converse instructions in the negligence and strict liability claims because the affirmative converse instructions failed to submit ultimate findings of fact which would totally bar plaintiff's claims. We disagree.

■■■ Affirmative converse instructions are permitted where an ultimate issue is hypothesized, which if true, would defeat plaintiff's claim. *Wilson v. Checker Cab Co.,* 431 S.W.2d 122, 123 (Mo.1968); MAI No. 33.01 (3d ed.). An affirmative converse, however, unlike a true converse, requires independent evidence to support it. *Wilson, supra.*

In her strict products liability claim, it was plaintiff's theory that the space heater was defective at the time of sale. Plaintiff also contended that the space heater was unreasonably dangerous at the time of sale and that defendants did not give adequate warning of the danger.

Plaintiff's negligence claim was based on the theory that either defendants were negligent because at the time of sale the heater was in defective condition due to an excessive electrical load or inadequate power supply cord, or that defendants failed to give an adequate warning as to the dangers from reasonably anticipated uses of the heater. Plaintiff's inadequate warning theory was based on a provision in the heater's instructional manual which stated it is normal for the heater plug to feel warm during normal use. Appellant's expert testified this was not true and would indicate a bad connection in the plug.

In her testimony, plaintiff insisted that the heater's power supply cord had not been spliced and that the heater had not been altered from the time of sale. Plaintiff's expert based his opinion, that the fire was a direct result of the excessive heat and crimp method of attachment, on the hypothesized fact that the heater had been unaltered from the time of sale and the power supply cord had not been spliced.

There was ample evidence that the power supply cord had been spliced and that the splice caused the fire, to support the affirmative converse instructions. If believed as true by the jury, both plaintiff's strict liability and negligence claims would be defeated.

If the heater had been altered by a post-sale splice, the foundation for plaintiff's causation evidence was destroyed. The converse required a finding that the splice was defective in that the instruction hypothesized that the splice directly caused the fire.

Plaintiff contends that it is the law in Missouri that a manufacturer is liable for injuries caused by alterations to a product that are reasonably foreseeable. Plaintiff's theory at trial, however, did not allege that splicing of the power cord was a reasonably foreseeable alteration. Her warning theory, as stated previously, concerned the instruction booklet that stated the plug would feel warm during use. If the splice was the direct cause of the fire as alleged in the affirmative converse instruction, a statement as to the temperature of the plug is irrelevant. Moreover, plaintiff's own testimony denied the existence of alterations to the heater and specifically denied the existence of a splice. "A plaintiff may not rest recovery on a theory which gainsays his own positive evidence." *Welch v. Hyatt*, 578 S.W.2d 905, 915 (Mo. banc 1979).

Plaintiff further contends that the affirmative converses were improper because the causation element cannot be conversed by an affirmative converse. We find plaintiff's contention without merit as *Wilson v. Checker Cab Co., supra*, cited as authority in MAI 33.05 Notes on Use for application of affirmative converse instructions, involved the use of an affirmative converse as to the causation element. In *Wilson*, the plaintiff had alleged defendant taxicab company was negligent in that its driver either stopped the taxicab so that plaintiff stepped out onto a patch of ice or started the taxicab before she had fully alighted. The converse provided that the jury must return a verdict for defendant if it believed plaintiff fell after she had alighted from defendant's taxicab and traveled twenty feet. The court noted: "If plaintiff fell after she had alighted from the taxicab and had traveled twenty feet, the *direct cause* of her damage could not have been that the taxicab moved 'while she was alighting,' or that the taxi driver 'failed to provide her with a reasonably safe place to alight.'" *Wilson, supra,* at 123 (emphasis added). Point denied.

Next, plaintiff contends the affirmative converse instructions are prohibited sole cause instructions under MAI No. 1.03 (3d ed.). MAI 1.03 prohibits sole cause instructions but further provides that a converse instruction may adequately present the same defense. Committee's Comment No. 3, MAI No. 1.03 (3d ed.); *Moore v. Parks*, 458 S.W.2d 344, 349 (Mo. 1970). This court has previously stated that proximate cause may be conversed by an affirmative converse instruction where the evidence supports that an intervening cause, here a post-sale splice, is the direct cause of the injury. *See, Fowler v. Robinson*, 465 S.W.2d 5, 11 (Mo.App.1971). Point denied.

Next, plaintiff contends the affirmative converse instructions prejudicially over emphasized defendants' splice theory and violated MAI 33.01.

Each defendant submitted their own, identical converse to each of plaintiff's verdict directors. This they were entitled to do as MAI 33.01 specifically provides that "[e]ach defendant will be allowed one converse instruction to respond to each verdict directing instruction directed to such defendant. No defendant will be required to join with any other defendant in a converse instruction." MAI No. 33.01 (3d ed.).

Additionally, plaintiff contends the affirmative converse instructions were prejudicially erroneous because they departed from the MAI 33.01 direction that where conversing alternative verdict directors, the phrase "Your *finding* must be for defendant" rather than "Your *verdict* must be for defendant" should be used.

The rationale behind the modification is that use of the word "finding" avoids directing a verdict for defendants if plaintiff prevails upon one alternative theory but not another. Here, the identical converse was given to each of plaintiff's verdict directors and if believed true would destroy the causation element of each of plaintiff's claims. We find no prejudice. Point denied.

Plaintiff's second major category on appeal alleges error in the giving of comparative fault instructions.

■ First, plaintiff correctly asserts that it was improper to give a comparative fault instruction in a strict products liability case. Following the trial of this case, the Missouri Supreme Court in *Lippard v. Houdaille Industries*, 715 S.W.2d 491, 493 (Mo. banc 1986), held that comparative fault principles do not apply to strict products liability cases.

■ In a companion case, the court addressed the prejudicial effect of the giving of a comparative fault instruction in a strict products liability case, stating: "Unless it can be said that this instruction did not contribute to the general verdict for the defendant reversal would be required." *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518, 521 (Mo. banc 1986). In *Barnes*, the court failed to find the comparative fault instruction prejudicial so as to require reversal. There, as here, the jury returned a general verdict for defendant and made an additional finding that plaintiff was 100% at fault and defendant was 0% at fault. The court found the additional finding assessing fault to be "surplusage" that did not contribute to the verdict. *Id*, at 522.

Plaintiff contends *Barnes* is distinguishable as there true converses were given, as opposed to affirmative converses, indicating the jury found one of the elements of plaintiff's case was not satisfied. We find *Barnes* applies equally where, as here, a proper affirmative converse is used.

The rationale behind *Barnes* is that lack of prejudice is determined by the fact the jury returned a general verdict for defend-

ants. *See, Lee v. Mirbaha*, 722 S.W.2d 80, 83 (Mo. banc 1986). The jury never actually addresses apportionment of fault until it first makes a finding in favor of plaintiff. *Bushong v. Marathon Electric Manufacturing Corp.*, 719 S.W.2d 828, 837 (Mo. App.1986).

Plaintiff further attempts to distinguish *Barnes* in that plaintiff's verdict director did not include language concerning assessment of fault to defendants while the verdict director used in *Barnes* did so. We find plaintiff's contention without merit as the verdict form requests the jury to assess fault to defendants and the jury found defendants to be free of fault. We conclude the comparative fault instruction did not contribute to the general verdict for defendants and thus was not prejudicial to plaintiff. Point denied.

■ Next, plaintiff contends it was error to give the comparative fault instruction as a defense to the strict products liability submission because negligence of a beneficiary is not a defense to a wrongful death action. As just stated, the jury does not reach the issue of apportionment of fault until it first finds in favor of plaintiff. Moreover, where, as here, a parent brings an action in her own name for the wrongful death of her infant, the negligence of the parent that contributes to the casualty which produced the death can be assessed against the parent. *State ex rel. St. Louis-San Francisco Railway Co. v. Pinnell*, 605 S.W.2d 537, 538 (Mo.App.1980). Defendants pled negligence by plaintiff in their answer. Point denied.

■ Next, plaintiff contends the comparative fault instructions given in both the strict liability and negligence claims were actually impermissible contributory negligence instructions because the instructions introduced negligence concepts. Negligence concepts are included, and required to be defined, under the new MAI instructions for comparative fault, MAI 37.01 et seq. (1986), which became effective September 1, 1986, after the date of this trial. Point denied.

Finally, plaintiff contends the comparative fault instructions gave the jury an impermissible roving commission. We find no merit to plaintiff's contention. In any event, as discussed previously, the jury never actually addresses apportionment of fault until it first makes a finding in favor of plaintiff and the jury here returned a general verdict for defendant.

We conclude that none of plaintiff's allegations of instructional error contain an error of substance with substantial potential for prejudicial effect. Because we affirm the judgment for defendants on the merits, we accordingly deny defendants' motion to strike plaintiff's record on appeal and defendants' motion to dismiss plaintiff's appeal. We likewise deny plaintiff's motion to strike defendants' brief.

The judgment of the trial court is affirmed.

SMITH, P.J., and REINHARD, J., concur.