

# In the Missouri Court of Appeals
# Eastern District

<u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| TYLER HOLLIS, A MINOR BY AND THROUGH HIS NEXT FRIEND, MOTHER, AND CONSERVATOR, KAREN HOLLIS, | ) ) ) ) | No. ED110884 |
| Appellant, | ) ) | Appeal from the Circuit Court of Cape Girardeau County |
| vs. | ) ) | |
| POPLAR BLUFF REGIONAL MEDICAL CENTER, LLC, ET AL., | ) ) ) | Honorable Michael M. Pritchett |
| Respondents. | ) | FILED: June 13, 2023 |

## Introduction

Tyler Hollis ("Appellant"), a minor, by and through his next friend and mother, Karen

Hollis ("Adoptive Mother") appeals from the trial court's judgment following a jury trial finding

in favor of Poplar Bluff Regional Medical Center, LLC (the "Hospital") and Jennifer Lay

("Lay") (collectively, "Respondents") on Appellant's negligence claim. Appellant was severely

injured on December 8, 2007 and diagnosed with shaken baby syndrome. Heather Lane

("Mother") pleaded guilty to child abuse following Appellant's injuries. Appellant alleged

Respondents had been in a patient-provider relationship with Mother four months earlier and

negligently failed to warn of child abuse. At trial, Respondent introduced evidence that Mother's

then-boyfriend, Ben Andrews ("Boyfriend"), abused Appellant and caused his injuries.

Appellant raises five points on appeal, four of which challenge an affirmative converse

instruction given by the trial court instructing that the jury should find for the Respondents if it believed Boyfriend injured Appellant. Appellant argues the affirmative converse instruction was improper and prejudicial because (1) the verdict directors did not omit any disputed ultimate issue, (2) the instruction's hypothesized facts were insufficient to bar Appellant's recovery, (3) the instruction was a prohibited sole cause instruction, and (4) the instruction gave the jury a roving commission by not specifying what "injured" meant in the case. Lastly, Point Five challenges the admission of evidence that supported the affirmative converse instruction. In particular, Point Five argues the trial court erred in admitting evidence of Boyfriend's fault because the evidence was inadmissible hearsay that lacked logical and legal relevance.

We hold that whether Mother or Boyfriend injured Appellant on December 8, 2007 was a disputed ultimate issue sufficient to bar Appellant's recovery that was omitted from the verdict directors. The trial court thus did not err in giving the affirmative converse instruction, which hypothesized that Respondents owed no duty at law to protect Appellant from the unforeseen criminal act of a third party outside the patient-provider relationship. We further hold that the supported affirmative converse instruction was not a prohibited sole cause instruction, and Appellant's roving-commission claim was not preserved for appellate review. We therefore deny Points One through Four. Because the record contained circumstantial evidence that Boyfriend abused Appellant, which was relevant to rebutting the duty element of Appellant's negligence claim, Appellant did not demonstrate reversible error in the trial court's evidentiary rulings, and we deny Point Five. Accordingly, we affirm the trial court's judgment.

### Factual and Procedural History

The following facts are limited to only those necessary to resolve the appeal.

Mother voluntarily committed herself to the Hospital's psychiatric ward from August 5 to August 10, 2007. Mother had multiple treating health care providers, including Lay, a clinical

2

therapist who provided mental health counseling. The parties dispute whether Mother indicated during her sessions with Lay that she posed a risk of abusing Appellant.

On December 8, 2007, approximately four months after Mother's release from voluntary commitment, Appellant was severely abused at his home, resulting in catastrophic injuries. Appellant was diagnosed with shaken baby syndrome.

Appellant filed his Third Amended Petition on May 16, 2019, alleging Respondents were liable for the abuse Appellant suffered through the catastrophic head and brain injuries he received on December 8, 2007 because Respondents negligently did not report Mother's risk for committing child abuse or neglect relative to Appellant when Mother was a patient.

At trial, Appellant adduced evidence that Mother abused Appellant. Mother was in jail during this civil trial because she had admitted to the criminal offense of abusing Appellant, specifically confessing that she injured him on December 8, 2007. Appellant sought to prove Respondents were negligent because had Lay made a hotline call to the Children's Division due to Mother's risk factors for committing child abuse or neglect while Mother was under Lay's care, Appellant would have been removed from Mother's custody and would not have been abused under her care.

Respondents adduced evidence that Boyfriend, not Mother, was caring for Appellant on December 8, 2007 and severely injured him. Appellant had filed motions in limine to preclude Respondents from introducing evidence that Boyfriend, not Mother, was the perpetrator of the child abuse against Appellant. The trial court ruled to exclude evidence of alleged fault of anyone other than Respondents with regard to comparative fault and apportionment of damages; however, the trial court permitted Respondents to introduce sole cause evidence. During trial, Appellant called two expert witnesses on the issue of causation, Shawn McCarver ("McCarver")

3

and Margaret Fletcher ("Fletcher"). Both experts testified that they considered Boyfriend's criminal record in arriving at their opinions. Over objection, Respondents introduced evidence of Boyfriend's prior conviction for assault against a child. Mother's uncle, Raymond Rodgers ("Uncle") testified that Boyfriend called him on the day of the incident and told Uncle he "dropped" Appellant. The trial court sustained Appellant's objection to Boyfriend's hearsay statement in the phone call. Uncle further testified that when he arrived at the scene, he found Appellant injured. Only Boyfriend was present. Mother was not at home but instead was at work. Over Appellant's objections, Respondents also introduced phone calls between Uncle and Mother as well as between Adoptive Mother and Mother, which were recorded by the Department of Corrections ("DOC") and admitted as business records. In extensive phone conversations between Mother and Adoptive Mother, Adoptive Mother said she believed that Boyfriend, not Mother, committed the child abuse.

Following a jury instruction conference, the trial court read the instructions to the jury, including Instructions Nos. 7 and 8, the verdict directors for Lay and the Hospital, respectively (collectively, the "Verdict Directors"). The Verdict Directors had tails relating to the affirmative converse Instruction No. 9. Instruction No. 7 provided:

> Your verdict must be for [Appellant] and against [Lay] and [the Hospital] if you believe:
>
> First, [Lay] knew, or pursuant to the standards of her profession should have known, that [Mother] presented a serious danger of future harm to a readily identifiable victim, [Appellant], and
> Second, [Lay] failed to notify appropriate authorities of the danger, and
> Third, [Lay] was thereby negligent, and
> Fourth, such negligence directly caused or directly contributed to cause damage to [Appellant].
> . . .
> **Unless you believe [Appellant] is not entitled to recover by reasons of Instruction No. 9.**

4

(Emphasis added).  Instruction No. 8 provided:

Your verdict must be for [Appellant] and against [the Hospital] if you believe:

First, [the Hospital] either:
hired [Lay], or
failed to adequately train [Lay], or
failed to adequately supervise [Lay], or
failed to adequately enforce its mental health policy T3 . . . , and
Second, [the Hospital] was thereby negligent, and
Third, such negligence directly caused or directly contributed to cause damage to [Appellant].
. . .
***Unless you believe [Appellant] is not entitled to recover by reasons of Instruction No. 9.***

(Emphasis added).  The trial court also gave Respondents' proffered affirmative converse instruction, Instruction No. 9, which stated:

Your verdict must be for [the Hospital] and [Lay] if you believe [Boyfriend] injured [Appellant].

Appellant objected to Instruction No. 9 on multiple grounds, including that it was insufficient to defeat Appellant's claim, was not supported by the evidence, was unnecessary to negate causation, and was an improper sole cause instruction.

In closing argument, Appellant argued that the evidence showed Mother abused Appellant on December 8, 2007 and caused his severe injuries.  The jury found the Respondents not liable.  Appellant moved for a new trial, and the trial court overruled the motion.  This appeal follows.

Points on Appeal

Appellant raises five points on appeal.  Points One through Four allege the trial court erred in giving Instruction No. 9.  Specifically, Point One argues the trial court erred in giving Instruction No. 9 because the verdict director did not assume or omit any disputed ultimate issue.  Point Two maintains the trial court erred in giving Instruction No. 9 because its hypothesized

5

facts were insufficient to bar recovery. Point Three asserts the trial court erred in giving Instruction No. 9 because it was a sole cause instruction prohibited by the Missouri Approved Instructions—Civil 1.03 (8th ed.) ("MAI"). Point Four argues the trial court erred in giving Instruction No. 9 because the instruction was vague and gave the jury a roving commission. Specifically, Appellant argues that the instruction did not specify what "injured" meant in the context of the case. Lastly, Point Five claims the trial court erred in admitting evidence of Boyfriend's purported fault because the evidence relating to Boyfriend's involvement was inadmissible hearsay, prejudicial, and lacked logical and legal relevance.

Discussion

## I.     Points One, Two, Three, and Four—The Affirmative Converse Instruction

### A.     Standard of Review

"[W]hether the jury was properly instructed is a question of law that is reviewed de novo." Zerpa v. XPO Logistics Freight, Inc., 662 S.W.3d 1, 5 (Mo. App. W.D. 2022) (quoting Chavez v. Cedar Fair, LP, 450 S.W.3d 291, 294 (Mo. banc 2014)). "We review the record in the light most favorable to submission of the instruction." Id. (citing Hayes v. Price, 313 S.W.3d 645, 650 (Mo. banc 2010)).

We will reverse a trial court's judgment for instructional error only if the error "materially affected the merits of the action." Id. (citing Chavez, 450 S.W.3d at 294). The party challenging the instruction has the burden to show prejudice by demonstrating that the instruction misdirected, misled, or confused the jury. Id. (citing Chavez, 450 S.W.3d at 294). "[I]f we find that by some theory the instructions are supportable, then their submission was proper." Lowe v. Mercy Clinic E. Cmtys., 592 S.W.3d 10, 21 (Mo. App. E.D. 2019) (citing Bach v. Winfield-Foley Fire Prot. Dist., 257 S.W.3d 605, 608 (Mo. banc 2008)).

6

B.      Affirmative Converse Instructions

Missouri approves the use of affirmative converse instructions in MAI 33.05(1).[1] See

Zerpa, 662 S.W.3d at 6 (citing Hiers v. Lemley, 834 S.W.2d 729, 734 (Mo. banc 1992)).  As

explained in the MAI 33.05(1) Notes on Use, "[a]n affirmative converse instruction is

appropriate where the verdict director assumes as true or omits a disputed ultimate issue."  Hiers,

834 S.W.2d at 735; see Medley v. Joyce Meyer Ministries, Inc., 460 S.W.3d 490, 500 (Mo. App.

E.D. 2015) (internal citations omitted).  Parties are entitled to verdict directing instructions that

require the jury to make express findings on disputed ultimate issues.  See Equity Fin. Res., Inc.

v. Overman, 619 S.W.3d 538, 542 (Mo. App. W.D. 2021) (quoting Hervey v. Mo. Dep't of

Corr., 379 S.W.3d 156, 160 (Mo. banc 2012)).  Thus, "[a]n affirmative converse instruction may

be appropriate where it is used by a defendant to submit an ultimate issue that was erroneously

excluded from plaintiff's verdict director."  MAI 33.05(1) Notes on Use (quoting Hiers, 834

S.W.2d at 734).  In contrast, a party should use a true converse instruction to negate an element

that is already submitted by the verdict director.  See Drury v. Missouri Pac. R.R. Co., 905

S.W.2d 138, 146–47 (Mo. App. E.D. 1995).

An affirmative converse, unlike a true converse, requires adducing independent evidence

in the record of the hypothesized fact submitted in the instruction.  Clark v. Sears, Roebuck &

Co., 731 S.W.2d 469, 471 (Mo. App. E.D. 1987) (internal citation omitted).  Further, that fact

must be sufficient in law to defeat the plaintiff's claim.  Zerpa, 662 S.W.3d at 6 (quoting Hiers,

834 S.W.3d at 734) (noting "'an affirmative converse [instruction] presents a hypothetical

---

[1] An affirmative converse instruction takes the following format: "Your verdict must be for defendant if you believe *(here insert the ultimate issue assumed as true or erroneously omitted from plaintiff's verdict director)*."  The MAI 33.05(1) Notes on Use direct that where an affirmative converse instruction is properly submitted, the verdict director is modified by adding an affirmative defense tail, which refers the jury directly from the verdict director to the affirmative converse instruction.

7

ultimate issue which, if true, would defeat plaintiff's claim' and 'requires independent evidence for support'"); MAI 33.05(1) Notes on Use.

### 1. Points One and Two—Disputed Issue of Fact Omitted by Verdict Directors was Sufficient to Bar Appellant's Recovery

Appellant maintains the Verdict Directors did not omit a disputed ultimate issue that would allow the giving of the affirmative converse Instruction No. 9. Further, Appellant argues Instruction No. 9's hypothesized fact—that Boyfriend, not Mother, injured Appellant—was not sufficient to bar Appellant's recovery. Respondents counter that the Verdict Directors (Instruction Nos. 7 and 8) did not submit to the jury the special relationship required to prove a duty existed on the part of Respondents to protect Appellant from Boyfriend's criminal act.

Missouri recognizes the general common law rule that there is no duty to protect someone from a third party's criminal act. Bradley v. Ray, 904 S.W.2d 302, 311 (Mo. App. W.D. 1995) (internal citation omitted). "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." M.B. v. Live Nation Worldwide, Inc., 661 S.W.3d 342, 350 (Mo. App. E.D. 2022) (quoting Wieland v. Owner-Operator Servs., Inc., 540 S.W.3d 845, 848 (Mo. banc 2018)). Indeed, "[t]he touchstone for the creation of a duty is foreseeability[.]" Scales v. Whitaker, 615 S.W.3d 425, 436 (Mo. App. E.D. 2020) (quoting Wieland, 540 S.W.3d at 848). Despite the general no-duty rule, Missouri, like other jurisdictions, has carved out an exception in which a duty is imposed where there exists a "special relationship" between the parties and the harm is foreseeable. Bradley, 904 S.W.3d at 311. Relevant to this appeal, Bradley held as a matter of first impression that liability for failure to warn may be imposed where there is a "special relationship" between a mental health provider and a patient who is the foreseeable perpetrator of harm against a readily identifiable victim. Id. at 311 (internal citations omitted).

8

In reaching its holding, Bradley discussed the seminal case imposing on mental health providers a duty to warn impending victims of psychiatric patients: Tarasoff v. Regents of Univ. of Cal., 551 P.2d 334 (Cal. 1976). In that case, a patient informed a university psychologist that he intended to kill Tatiana Tarasoff ("Tarasoff"). Tarasoff, 551 P.2d at 341. The patient later killed Tarasoff. Tarasoff's parents filed suit, alleging the university psychologist owed her a duty to warn of the threat against her life. The California Supreme Court noted that foreseeability was the most important consideration in establishing whether a duty exists. Id. at 342. The Court acknowledged the difficulty of predicting whether a mental health patient may criminally act against their intended victim, but held the "special relationship" between a psychologist and a patient establishes a duty of care for the safety of both the patient and "any third person whom the [mental health provider] knows to be threatened by the patient." Id. at 344 (internal citation omitted). Most jurisdictions have adopted a Tarasoff duty exception. Bradley, 904 S.W.3d at 307–08 (internal citations omitted); see e.g., Paul B. Herbert & Kathryn A. Young, Tarasoff at Twenty-Five, 30 J. AM. ACAD. PSYCHIATRY & L. 275, 275 (2002).

The present appeal is governed by the fact pattern and holding in Bradley, which is the sole case in Missouri addressing failure to warn in the context of child abuse where the victim was abused by a patient who had a "special relationship" with a mental health provider. Bradley relied on the "special relationship" between a mental health provider and patient to impose a duty to warn of a patient's known abuse against a specific child victim. Bradley, 904 S.W.2d at 312. In Bradley, the patient told his psychologists that he had been abusing his stepdaughter for nine years, starting when the victim was four years old. Id. at 305. The psychologists failed to report the child abuse. Id. The child's next friend filed suit alleging, among other claims, that the psychologists breached the common law duty to warn of suspected child abuse. Id. In

9

recognizing a common law duty existed to hold the psychologists liable for failure to warn,[2] Bradley emphasized the critical role of foreseeability in establishing duty even under the recognized "special relationship" exception. Id. at 311. Critically, Bradley noted the duty to warn arose not only from the special relationship between the health care provider and the patient, but from the health care provider having specific knowledge that the patient posed a dangerous threat to the plaintiff as well as having the time and ability to prevent the harm. Id. at 311–12. Bradley considered multi-jurisdictional approaches to Tarasoff in relation to Missouri jurisprudence and discerned that imposing "a legal duty on certain members of the medical profession in order to protect from *future harm by a patient"* was not a new concept in Missouri. Id. at 311 (emphasis added). Bradley concluded that the public policy of Missouri, the special relationship between the psychologists and their patient, and the foreseeability of harm to the child under the facts of the case gave rise to a duty on the part of the psychologists to warn appropriate authorities of the risk of future abuse by the patient against the child. Id. at 312. "Since Bradley, there is at least a narrow duty to warn in the context of child abuse." Timothy E. Gammon & John K. Hulston, The Duty of Mental Health Care Providers to Restrain Their Patients or Warn Third Parties, 60 Mo. L. Rev. 749, 764 (1995) (suggesting the egregious and unique facts of the child abuse in Bradley support construing the case narrowly). Notably, Missouri courts have refused to expand the "special relationship" exception to create a duty for mental health providers to warn the general public about the dangerous propensities of their patients. Virgin v. Hopewell Ctr., 66 S.W.3d 21, 26–27 (Mo. App. E.D. 2001).

---

[2] The Child Abuse Reporting Act, Section 210.115, RSMo, criminally penalizes health practitioners for failure to report suspected child abuse but does *not* create a private right of action, nor does breach of the mandatory-reporting law amount to negligence per se. Bradley, 904 S.W.2d at 314.

10

Under the holding in Bradley, evidence of the special relationship between Respondents and Mother arising out of her mental health treatment from Lay could impose on the Hospital and Lay a duty to warn of foreseeable child abuse against Appellant *by Mother.* See Bradley, 904 S.W.2d at 312. But the Verdict Directors did not limit Respondents' duty to warn due to the special relationship between Respondents and Mother *as the perpetrator of the abuse.* Bradley, as well as Tarasoff and its progeny, imposed a duty to warn because the harm to the victim *by the patient* was clearly foreseeable by the mental health providers. See id.; see also Timothy E. Gammon, Developing Responsibilities and Liability: A Warning for Psychotherapists, 52 J. Mo. B. 306, 308 (1996) (centering the discussion of duty to warn or restrain in patient-provider relationships on the patient being the source of harm to an identifiable third party).

Important to our analysis, the affirmative converse Instruction No. 9 includes a hypothesized factual issue omitted from the verdict directors—whether Boyfriend, not Mother, abused Appellant on December 8, 2007. If true, this omitted fact converses the duty element at law because Appellant identifies no legal authority finding a common law duty of Respondents to warn against the unforeseeable criminal act of child abuse against Appellant by Boyfriend, who was neither a patient of Respondents nor in any special relationship with Respondents. See Bradley, 904 S.W.2d at 312. Because conversing the duty element would serve as an absolute bar to Appellant's recovery against Respondents, submitting this issue in an affirmative converse instruction was proper. See Zerpa, 662 S.W.3d at 6–7.

As Bradley makes clear, a mental health provider's basis for foreseeing the harm committed *by the patient* against a readily identifiable victim is integral to imposing a duty for failure to warn. See Bradley, 904 S.W.2d at 311–12. The issue of foreseeability centers on the predictability of the abuse or neglect of Appellant on December 8, 2007 *by Mother*, and not by a

11

person who was not a patient of Respondents. If the child abuse was committed by Boyfriend, as submitted in the affirmative converse Instruction No. 9, then the foreseeability of such abuse would be too speculative to establish Respondents' duty to warn arising out of their patient-provider relationship with Mother. To hold otherwise potentially would make a mental health provider liable for an indeterminate range of harms for an indeterminate amount of time. As noted in his brief, Appellant does not concede Boyfriend injured him and instead introduced evidence that Mother injured him. Appellant identifies no evidence in the record that Mother ever told Lay about Boyfriend's propensity to abuse Appellant. Rather, Appellant marshaled evidence at trial and argued to the jury that Mother was likely to and in fact did abuse Appellant on December 8, 2007. Under that lens, Appellant asserts Respondents should have been limited to a true converse instruction because Boyfriend's role—or lack thereof— was subsumed within the causation element of the Verdict Directors, and therefore already submitted for the jury's consideration. See Drury, 905 S.W.2d at 147 (finding an affirmative converse instruction about an employee's negligence was not warranted where that employee's negligence was already submitted in the verdict director's causation element).

Appellant's argument that Instruction No. 9 is an improper sole cause instruction on intervening causation is premised on his misguided reliance on case law addressing negligence actions involving comparative fault. The facts before us do not present an issue of potential comparative fault between two persons. The liability issue presented is not premised upon a claim by Appellant alleging acts by Mother and/or Boyfriend. Rather, Appellant directs his claim against the Hospital and Lay. Indeed, this case is wholly distinguishable from the motor vehicle accident case on which Appellant relies, because the facts in that case supported a finding that both drivers could have been negligent, thereby each contributing to the plaintiff's

12

injuries.  See Will v. Gilliam, 439 S.W.2d 498, 501–02 (Mo. 1969) (finding a sole cause instruction improper because its implication that the defendant-driver could not be held liable if the driver of the plaintiff's vehicle was negligent ignored the possibility that the negligence of the two drivers combined to cause the accident and injure the plaintiff).  The issue presented in Appellant's petition is not whether the conduct of two separate actors could have combined to cause the physical abuse suffered by Appellant.  Here, only *one* person inflicted the traumatic injuries on Appellant on December 8, 2007: Mother or Boyfriend.  Accordingly, the contributory negligence issue raised in Will is inapposite.  Instruction No. 9 is a proper affirmative converse instruction that hypothesizes a disputed ultimate fact supported by independent evidence negating liability under the duty element of Appellant's negligence claim.  See Zerpa, 662 S.W.3d at 6 (quoting Hiers, 834 S.W.3d at 734).

Further, we are persuaded that a true converse instruction would not have adequately addressed Appellant's proximate cause theory of liability.  Appellant has suggested that Respondents *proximately* caused Appellant's injuries by failing to make the hotline call that would have removed Appellant from Mother's care, and by extension, prevented Mother from placing Appellant in Boyfriend's care approximately four months later.  Appellant thus maintains that even if a jury found that Boyfriend injured Appellant on December 8, 2007, that fact was not an omission of a disputed ultimate issue that would bar his recovery.  We disagree. If Boyfriend, not Mother, injured Appellant on December 8, 2007, that fact would bar Appellant's recovery against Respondents because Bradley imposes a duty to warn on the health care provider only when there is a special relationship between the mental health provider and the *perpetrator* of the child abuse.  See Bradley, 904 S.W.2d at 312.  Boyfriend had no special relationship with Respondents.  Additionally, Appellant's tenuous proximate cause theory further

13

justified the submission of the Respondents' requested affirmative converse instruction to untangle the disputed issue in the jury instructions. See Equity Fin. Res., Inc., 619 S.W.3d at 542 (internal quotation omitted); see also Clark, 731 S.W.2d at 472; MAI 33.05(1) Notes on Use (quoting Hiers, 834 S.W.2d at 734).

We are mindful of the unique facts and litigation in this case. Appellant identifies no cases in Missouri or any other jurisdiction in which the Tarasoff duty-to-warn exception has been broadened to encompass the criminal act of a third party *other* than the psychiatric patient. Absent a duty to warn, Appellant's negligence claim fails. See M.B., 661 S.W.3d at 349 (internal quotation omitted). Therefore, because Boyfriend's conduct was not wholly subsumed in the causation element of the Verdict Directors, Respondents were permitted to submit the omitted issue in an affirmative converse instruction. See Medley, 460 S.W.3d at 500 (citing Hiers, 834 S.W.2d at 734–35) (additional citations omitted). Viewing the record in the light most favorable to giving the instruction, Instruction No. 9 supplied a hypothesized ultimate fact, omitted from the Verdict Directors, that would bar Appellant's recovery, thereby supporting the trial court's giving the instruction. See Zerpa, 662 S.W.3d at 6 (quoting Hiers, 834 S.W.3d at 734). Points One and Two are denied.

### 2. Point Three—Instruction No. 9 was Not a Sole Cause Instruction Prohibited by MAI 1.03

MAI 1.03 provides that "[n]o instruction shall be given on behalf of the defendant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence." MAI 1.03's commentary lists three reasons for the restriction: (1) such instructions require the recitation of detailed evidentiary facts and this practice is no longer permitted; (2) the negligence of one other than defendant is properly submitted in the causation element of the verdict director and reference thereto in an additional instruction is confusing and misleading; and (3) the

14

prescribed converse forms adequately present the same defense. Importantly, "MAI 1.03 does not prevent a defendant from introducing evidence and arguing that the acts of one other than the defendant were the sole cause of the [plaintiff's injury]." Simpson v. Smith, 771 S.W.2d 368, 373 (Mo. App. S.D. 1989) (finding the trial court did not err in permitting the defendant to argue that the sole cause of the plaintiff's death in a motor vehicle accident was the negligence of someone other than the defendant); see also Varsalona v. Ortiz, 445 S.W.3d 137, 141 n.6 (Mo. App. W.D. 2014) (quoting Oldaker v. Peters, 817 S.W.2d 245, 253 (Mo. banc 1991)).

Here, the trial court expressly permitted sole cause evidence about Boyfriend to come into the record. The trial court ruled in response to Appellant's general motion in limine "to exclude any evidence or testimony regarding the alleged fault of anyone other than the [Respondents] *with regard to issues of comparative fault or apportionment of damages*. Sole cause evidence shall be allowed." (Emphasis added). Appellants maintain that Instruction No. 9 was a prohibited sole cause instruction because it hypothesized that Boyfriend was the sole cause of Appellant's injuries.

Certainly, there is noticeable tension between MAI's guidance on affirmative converse instructions that reach sole cause defenses on the one hand and MAI's prohibition against sole cause instructions on the other. See Hiers, 834 S.W.3d at 735 (noting "[a]n affirmative converse instruction tends to resemble a prohibited 'sole cause' instruction"). However, when faced with that seeming contradiction in Clark, a products liability case in which a defendant-manufacturer submitted an affirmative converse instruction alleging an alternative cause of the plaintiff's injury, we held that MAI 1.03 and MAI 33.05(1) can be harmonized. See Clark, 731 S.W.2d at 472.

15

Clark noted that MAI 1.03 prohibits sole cause instructions *"but further provides that a converse instruction may adequately present the same defense."* Id. (citing MAI 1.03 Committee Comment A.3). MAI 33.05(1) on converse instructions is one such converse form that may present the same defense. Thus, the mere fact that an affirmative converse presents a sole cause defense does not make that instruction improper under MAI 1.03. See id. In Clark, we explained that "[t]his [C]ourt has previously stated that proximate cause may be conversed by an affirmative converse instruction where the evidence supports that an intervening cause . . . . is the direct cause of the injury." Id. (internal citation omitted). We are persuaded the reasoning of Clark applies here. See id.

As discussed in Points One and Two above, we explained that Instruction No. 9 was not merely conversing causation, but instead hypothesized a disputed ultimate issue of fact omitted by the Verdict Directors that was sufficient to bar Appellant's recovery. The instruction properly submitted to the jury that if it found that Boyfriend, not Mother, injured Appellant, then Respondents could not be liable for Appellant's injuries. The underlying basis for Instruction No. 9 is that Respondents owed no duty to protect Appellant from Boyfriend's unforeseen criminal act. Because Instruction No. 9 met the standard for affirmative converse instructions in MAI 33.05(1), and because MAI 1.03 recognizes that other non-prohibited converse forms may address sole cause defenses, the trial court did not err in giving the affirmative converse Instruction No. 9. See Simpson, 771 S.W.2d at 373; Clark, 731 S.W.2d at 472. Point Three is denied.

### E.      Point Four—Roving-Commission Claim Unpreserved for Appeal

Respondents contend that Appellant's roving-commission claim was not preserved for review and should be dismissed.

16

"If on appeal an alleged error relating to an instruction differs from or is not included in the specific objections made to and determined by the trial court, it may not be reviewed by the appellate court." Lowe, 592 S.W.3d at 24 (internal citations omitted). "Counsel shall make *specific objections* to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto *before the jury retires to consider its verdict,* stating *distinctly* the matter objected to and the grounds of the objection." Id. (quoting Rule 70.30)[3] (emphases in original). An appellant "is not entitled to review of a different, untimely-raised claim of instructional error." Id. (internal citation omitted); see also Denney v. Syberg's Westport, Inc., 665 S.W.3d 348, 355 (Mo. App. E.D. 2023) (internal citation omitted) (noting a party fails to preserve a claim that the jury instruction gave a roving commission by failing to object on that basis during the instructions conference). Additionally, where a party seeks discretionary review of an unpreserved claim, "plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." Denney, 665 S.W.3d at 355 (quoting Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist., 635 S.W.3d 109, 127–28 (Mo. App. E.D. 2021)).

During the jury instruction conference, Appellant objected to Instruction No. 9 on numerous grounds, including those discussed in Points One through Three. Appellant did not object to Instruction No. 9 on the grounds that it was a roving commission or that the term "injured" was vague. Appellant raised those grounds as claims of error for the first time in his motion for new trial. Accordingly, because Appellant was obligated to preserve the specific grounds of the objection before the instructions were read to the jury, the claim was untimely. See Lowe, 592 S.W.3d at 24 (internal citation omitted). In his reply brief, Appellant does not

---

[3] All Rule references are to Mo. R. Civ. P. (2022).

request plain error review.  See Denney, 665 S.W.3d at 355 (internal citation omitted).  Even were we to reach the merits of the roving-commission claim, we would find no support for Appellant's contention that the jury could have been confused about the injury at issue.  The evidence at trial consistently sought to hold Respondents liable for Appellant's shaken-baby-syndrome injuries inflicted on December 8, 2007.  See Williams v. Mercy Clinic Springfield Cmtys., 568 S.W.3d 396, 413 (Mo. banc 2019) (internal citation omitted) ("When determining whether a roving commission occurred, a jury instruction should be considered in the context of the trial as a whole."); Klotz v. St. Anthony's Med. Ctr., 311 S.W.3d 752, 767 (Mo. banc 2010) (internal citation omitted) ("Where the testimony in a case explains a phrase used in the verdict director, there is no 'roving commission.'")

Point Four was not preserved for appellate review through a timely objection on the specific grounds alleged therein.  See Denney, 665 S.W.3d at 355 (citing Lowe, 592 S.W.3d at 24).  The point is denied.

## II.     Point Five—Evidentiary Challenges

### A.      Rule 84.04

Preliminarily, Respondents suggest we should dismiss Point Five as impermissibly multifarious.  "A point relied on is multifarious and violates Rule 84.04(d) when it groups together multiple, independent claims rather than a single claim of error."  See T.G. v. D.W.H., 648 S.W.3d 42, 49 (Mo. App. E.D. 2022) (internal citation omitted).  "A multifarious point constitutes grounds for dismissal."  Id. (internal citation omitted).  Correspondingly, all arguments must be preserved in the related point relied on.  See Rule 84.04(d)–(e).  "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review."  Hale v. Burlington N. & Santa Fe Ry. Co., 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (internal quotation omitted).

18

Appellant's Point Five broadly states that the trial court erred in admitting evidence of Boyfriend's purported conduct because the evidence was inadmissible and substantially prejudiced Appellant in that the evidence contained multiple layers of hearsay and lacked both logical and legal relevance. In the argument portion of his brief, Appellant challenges three specific pieces of evidence ruled on by the trial court: (1) Boyfriend's guilty plea to a prior assault against a child; (2) Uncle's testimony that Boyfriend in a phone call told Uncle he dropped the baby; and (3) DOC phone recordings in which Adoptive Mother stated that Boyfriend, not Mother, abused Appellant. The trial court made distinct evidentiary rulings on the evidence. Further, each evidentiary ruling involved a different form of hearsay evidence—a prior conviction, testimony about a phone call statement, and jail telephone recordings—which require distinct legal arguments that should have been preserved in the point relied on. See Hale, 638 S.W.3d at 60 (internal citation omitted) (noting a point relied on must sufficiently put the Court and the respondent on notice as to which specific ruling or action appellant is challenging). The point relied on is therefore multifarious. See id. at 61 (internal quotation omitted). Moreover, the thrust of Appellant's argument in Point Five is that without such evidence in the record, no evidence supported giving the affirmative converse Instruction No. 9. Yet, the point relied on makes no mention of instructional error. The point relied on solely disputes the trial court's evidentiary rulings and does not claim reversible error on the grounds that Instruction No. 9 was unsupported by the record. Thus, the instructional-error claim is not raised in the point on appeal and is not preserved for review. See Rule 84.04(d)–(e); Hale, 638 S.W.3d at 61 (internal citation omitted). Appellant did not respond to Respondents' Rule 84.04 argument in his reply brief.

Nonetheless, we have discretion to review a point *ex gratia* where the arguments are readily understandable and the deficiencies do not force us to advocate for any party. See Scott v. King, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) (internal citation omitted); see also Hale, 638 S.W.3d at 63. Appellant's overarching argument against the admission of hearsay evidence of Boyfriend's conduct credibly links the disparate evidentiary challenges, and we find the record permits us to reach a dispositive holding without exclusively relying on Appellant's multifarious claims. Further, the main argument is closely linked to the preceding points challenging Instruction No. 9 discussed above. Therefore, we choose to exercise our discretion to review the point on its merits. See Hale, 638 S.W.3d at 63; Scott, 510 S.W.3d at 892.

B.      Standard of Review

"The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." Mitchell v. Kardesch, 313 S.W.3d 667, 674–75 (Mo. banc 2010) (internal quotation omitted). A trial court has "'broad leeway in choosing to admit evidence,' and its exercise of discretion will not be disturbed unless it 'is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" Id. (internal quotation omitted). To show reversible error in the admission of evidence, the appellant must also demonstrate prejudice. Id. (internal quotation omitted).

C.      Analysis

Appellant identifies three instances of hearsay evidence relating to Boyfriend's abuse of Appellant.[4] "A hearsay statement is an out-of-court statement offered for the truth of the matter asserted therein and 'depends on the veracity of the statement for its value.'" Saint Louis Univ.

---

[4] Appellant avers that no pre-trial ruling was made as to whether evidence or argument relating to Boyfriend's conduct would be admissible as sole cause evidence. This assertion is plainly contravened by the record. As noted in Point Three, the trial court clearly permitted Respondents to argue sole cause evidence regarding the non-comparative fault of persons other than Respondents in its ruling on Appellant's general motion in limine.

20

v. Geary, 321 S.W.3d 282, 291 (Mo. banc 2009) (internal quotation omitted). "Hearsay evidence is objectionable because the person who makes the statement offered is not under oath and is not subject to cross-examination." Id. (internal citation omitted). "Hearsay is inadmissible unless it fits into a recognized exception or it is used for a non[-]hearsay purpose." Id. (internal citations omitted).

In order to be admissible, evidence must be both logically and legally relevant. Nolte v. Ford Motor Co., 458 S.W.3d 368, 382 (Mo. App. W.D. 2014) (internal quotation omitted). A court must "weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." Id. (internal quotation omitted); see also McGaughy v. Laclede Gas Co., 604 S.W.3d 730, 758 (Mo. App. E.D. 2020) (internal quotation omitted) ("Evidence is legally relevant if 'its probative value outweighs any prejudicial effect on the jury.'").

### 1. Boyfriend's Prior Guilty Plea to Assault of a Minor

Appellant called McCarver and Fletcher as expert witnesses on causation. Both McCarver and Fletcher testified that they reviewed Boyfriend's criminal record in forming their opinions. When cross-examining McCarver, Respondents sought to introduce part of Boyfriend's criminal record, specifically his guilty plea to third-degree assault of a minor in October 2006, for which he received two years' probation.

A guilty plea conviction constitutes documentary hearsay when used as evidence of the offenses committed. See State v. Tisius, 362 S.W.3d 398, 406 (Mo. banc 2012). Respondents maintain that Boyfriend's guilty plea was properly admitted under the exception for certified

21

court records in Section 490.130.[5]  Section 490.130 provides that "[c]opies from the record of proceedings of any court of this state, attested by the clerk thereof . . . shall be received as evidence of the acts or proceedings of such court in any court of this state."  In re S.F.M.D., 447 S.W.3d 758, 767 (Mo. App. W.D. 2014) (quoting Section 490.130).  Missouri courts caution that not every court document admitted under Section 490.130 is admitted for the truth of the matters asserted within, such as the admission of petitions or indictments that present mere allegations.  See id.; see also Tisius, 362 S.W.3d at 406 (noting a properly admitted indictment only serves to prove that the defendant had been charged with a crime, not that the defendant had actually engaged in any criminal conduct).  Here, the challenged evidence is a conviction, and the trial court did not err in admitting it under Section 490.130.  See Tisius, 362 S.W.3d at 406 (upholding a trial court's admission of a complaint to which the defendant had pleaded guilty under the hearsay exception for certified court records).

Turning to relevance, both expert witnesses reviewed Boyfriend's criminal history.  Thus, Boyfriend's guilty plea was relevant to cross-examining Appellant's expert witnesses on the bases on which they formed their opinions.  See State ex rel. State Highway Comm'n v. Barron, 400 S.W.2d 33, 37–38 (Mo. 1966) ("The hearsay and best evidence rules should not be applied to prevent an expert witness from giving the basis of his opinion.").  For example, although Fletcher denied having known that Boyfriend pleaded guilty to assaulting a minor, Fletcher stated she was aware Boyfriend had been arrested for something and been placed on probation and, moreover, testified that fact was important to her in forming her opinion on the case.  Appellant elicited testimony from Fletcher that Boyfriend's outstanding warrants were a stressor in the household.  The trial court also found Boyfriend's guilty plea relevant to the expert

---

[5] All Section references are to RSMo (2016), unless otherwise noted.

22

witnesses' evaluations of the risk factors for child abuse in Mother's home, noting that one of the risk factors would be if Mother had an individual in the home with a conviction for child abuse. Given the propriety of admitting the evidence under Section 490.130 and its relevance to Appellant's own expert-witness arguments about Mother's risk factors for child abuse in the home, we do not find the trial court abused its discretion. See Kardesch, 313 S.W.3d at 674–75.

### 2. Uncle's Testimony as to Boyfriend's Phone Call Statement

Uncle testified at trial that on December 8, 2007, Boyfriend called him and "said that he dropped the baby [(Appellant)]." Appellant promptly objected on hearsay grounds, and the trial court sustained the objection.

When the trial court sustains an objection to improper evidence, and no further remedial action is requested, nothing is preserved for appellate review because the requested relief was granted. Maloney v. Benchmark Ins. Co., 628 S.W.3d 667, 680 (Mo. App. W.D. 2021) (quoting Sanders v. Ahmed, 364 S.W.3d 195, 211 (Mo. banc 2012)). Additionally, sustaining an objection is a sufficient remedy to improper evidence, as we must presume the jury follows the trial court's instructions to disregard testimony to which objections were sustained. See Matter of Stiles, 662 S.W.3d 322, 332 (Mo. App. S.D. 2023) (internal citation omitted).

Here, Appellant requested remedial action, and the trial court granted relief by sustaining the objection. We presume the jury followed the trial court's instructions to disregard evidence to which an objection was sustained. See id. We recognize the record reflects a subsequent objection relating to Uncle's testimony that Boyfriend again said he dropped the baby after Uncle arrived at the scene. Appellant, however, clearly identifies only the phone call testimony between Boyfriend and Uncle as the basis for his hearsay claim. Because Appellant's objection

23

to the phone call evidence was sustained and Appellant sought no further remedial action, no further relief is merited on appeal. See Maloney, 628 S.W.3d at 680 (internal quotation omitted).

### 3. Adoptive Mother's DOC Phone Recording Statement

Adoptive Mother testified she had fifty recorded DOC phone calls with Mother between 2011 and 2014. Adoptive Mother affirmed that she made statements in those phone calls that Mother was innocent and at work when the abuse happened and that Boyfriend was responsible and should be in jail. Respondents sought to introduce the DOC phone recordings under the business-records exception to hearsay. See Section 490.680. Appellant acknowledged that Respondents timely filed a business-record affidavit for the five CDs containing the DOC phone recordings and conceded that the business-records exception applied. Appellant raised eight objections to playing a portion of the phone recordings for the jury and clarified that the hearsay objection was not to "that underlying level of hearsay" covered by the business-records exception but rather to double hearsay within the recorded statements. Although Appellant lodged his objections to the DOC phone recordings overall rather than to specific hearsay statements therein, Appellant's objections included hearsay and relevance of Adoptive Mother's statement that she believed Boyfriend hurt Appellant, not Mother, which is the focus of the claim on appeal.

Respondents suggest that the entirety of the DOC phone recordings, including Adoptive Mother's statement, were admissible under a number of hearsay exceptions, such as Section 490.220 (public records) and Section 217.075 (offender records). See e.g., Eltiste v. Ford Motor Co., 167 S.W.3d 742, 748 (Mo. App. E.D. 2005) (citing Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47, 55 (Mo. banc 1999)) (noting Section 490.220 eliminated the foundational requirements of authentication, best evidence, and hearsay for the admission of certain public documents so long as the requirements of the statutes are met and the records are relevant).

24

However, to the extent that Appellant challenges Adoptive Mother's statement that Boyfriend abused Appellant for its truth, inadmissible hearsay evidence does not become admissible merely because it is contained in a business record or other similar exception. See Nichols v. Preferred Risk Grp., 44 S.W.3d 886, 894 (Mo. App. S.D. 2001) (internal citation omitted); see also Kerr v. Curators of the Univ. of Missouri, 512 S.W.3d 798, 810 (Mo. App. W.D. 2016) (internal quotation omitted) ("[A]hearsay statement contained within other hearsay evidence is admissible only where both the statement and the original hearsay evidence are within exceptions to the hearsay rule.").

Respondents alternatively contend the DOC phone recordings were admissible for permissible non-hearsay purposes of notice and impeachment. Specifically, Respondents maintain the phone conversations were relevant to the issue of Respondents' lack of notice that Mother posed a danger to Appellant. Respondents further maintain that Adoptive Mother's statements in the DOC phone recordings stand in direct opposition to the claims she filed against Respondents in her petition on behalf of Appellant.

Assuming *arguendo* that Adoptive Mother's recorded statement that "the [B]oyfriend did it" was inadmissible hearsay, we are not persuaded that Appellant has demonstrated prejudicial error in its admission. See Mitchell, 313 S.W.3d at 675 (internal quotation omitted). As Respondents correctly note, Appellant limits his appeal to three evidentiary rulings, which comprise only *some* of the evidence in the record regarding Boyfriend's alleged involvement in Appellant's abuse. Critically, even were the trial court to have excluded all disputed hearsay evidence that Boyfriend injured Appellant, Appellant neglects to address the additional circumstantial evidence in the record that put Boyfriend's conduct squarely at issue. Uncle provided eyewitness testimony placing Boyfriend, not Mother, at the scene of Appellant's injury

25

on December 8, 2007. Appellant was taken for emergency medical care and diagnosed with severe trauma resulting from shaken baby syndrome within hours after Uncle's arrival. Appellant did not object to this evidence at trial or on appeal. "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." Precision Elec., Inc. v. Ex-Amish Specialties, Inc., 400 S.W.3d 802, 811 (Mo. App. W.D. 2013) (internal quotation omitted). Accordingly, Appellant has not shown that the trial court's evidentiary rulings constituted reversible error. See Mitchell, 313 S.W.3d at 675 (internal quotation omitted).

Although we found that Appellant's point relied on did not raise a claim of instructional error, we nonetheless address the issue raised in the Argument section of his brief that had the challenged hearsay evidence been excluded, there would have been no evidence to support giving the affirmative converse Instruction No. 9. See Clark, 731 S.W.2d at 471 (internal citation omitted) (noting an affirmative converse must be supported by independent evidence in the record); see also Hayes, 313 S.W.3d at 650 (internal quotation omitted) (noting any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue). Again, Appellant omits any discussion of the admitted circumstantial evidence that Boyfriend abused Appellant. A trial court may properly give a jury instruction that is supported by circumstantial evidence in the record. Fairbanks v. Hendricks, 601 S.W.3d 320, 327 (Mo. App. S.D. 2020) (internal quotation omitted) (noting evidence to support a jury instruction may come from circumstantial evidence or favorable inferences drawn from the evidence); Marion v. Marcus, 199 S.W.3d 887, 894 (Mo. App. W.D. 2006) (internal quotation omitted) ("[C]ausal 'connection can be proven by reasonable inferences from proven fact or by circumstantial evidence—direct proof is not required[.]'").

Further, the relevance of the circumstantial evidence in the record is clear from our discussion in the preceding points. See McGraughy, 604 S.W.3d at 758 (internal citation omitted). Evidence that Boyfriend, not Mother, perpetrated the child abuse against Appellant that resulted in his shaken-baby-syndrome injuries was highly relevant to whether Respondents' "special relationship" with Mother created a legal duty to protect Appellant from Boyfriend's criminal conduct. See Bradley, 904 S.W.2d at 312; see also Zerpa, 662 S.W.3d at 6 (quoting Hiers, 834 S.W.3d at 734). Evidence that Boyfriend abused Appellant on December 8, 2007 was relevant to Respondents' argument at trial, submitted in Instruction No. 9, that Respondents were not liable for Appellant's injuries. Such evidence was not more unfairly prejudicial than probative merely because it rebutted an element of Appellant's negligent-failure-to-warn claim. See McGraughy, 604 S.W.3d at 758; Nolte, 458 S.W.3d at 382 (internal quotation omitted). The evidence was properly submitted to the jury, which was free to make reasonable inferences therefrom and decide the issues of fact. See Fairbanks, 601 S.W.3d at 327–28 (internal quotation omitted). Point Five is denied.

Conclusion

The judgment of the trial court is affirmed.

_Kurt S. Odenwald_
KURT S. ODENWALD, Presiding Judge

Thomas C. Clark II, J., concurs.
William L. Syler, S.J., concurs.

27